ALEXANDER WEINSTEIN and Another, as Trustees of WARNER-QUINLAN COMPANY, in Proceedings for Reorganization, Pursuant to Section 77-B of the National Bankruptcy Act, Appellants, *v.* MARCELINO GARCIA and Another, Copartners, Doing Business under the Firm Name of GARCIA & DIAZ, Respondents.

First Department, June 22, 1937.

*George H. Cohn* of counsel [*Herman C. Rubino* with him on the brief; *Goldwater & Flynn*, attorneys], for the appellants.

*Edgar R. Kraetzer* of counsel [*Stanley W. Schaefer* with him on the brief; *Haight, Griffin, Deming & Gardner*, attorneys], for the respondents.

GLENNON, J. This action was instituted by Warner-Quinlan Company to recover from the defendants the sum of $4,009.92 on three causes of action.

The first was for oil sold and delivered on January 31, 1934, of the agreed price and reasonable value of $3,629.92. It was conceded upon the trial that this claim of plaintiff was well founded, since the defendants did not pay the purchase price, and as a result counsel for the defendants consented to the direction of a verdict on this cause of action.

The second was for demurrage caused by delay in accepting a delivery of oil tendered alongside one of defendants' vessels on the 16th of December, 1933. The amount demanded was $185, with interest.

The jury returned a verdict in favor of the plaintiff on the first and second causes of action and no cross-appeal has been taken by the defendants from the result which was reached.

This appeal is directed only to the judgment in favor of defendants on plaintiff's third cause of action and on defendants' counterclaim for the sum of $2,835.87.

The third cause of action is based upon the failure and refusal of the defendants to accept the delivery of 1,000 tons of bunker oil C on the 12th day of February, 1934. The damage sought was for demurrage only, and was fixed at $195.

Defendants, " For a separate and complete defense to the third cause of action and for a counterclaim, * * * allege " in effect: " That on or about the 12th day of February, 1934, defendants duly ordered a quantity of about 6624.15 barrels of bunker oil C, to be delivered to their s/s ' Navemar ' then lying at Brooklyn, N. Y." It is not disputed that 6,624.15 barrels is simply another way of expressing 1,000 tons. The thirteenth paragraph of the answer contains the following: " That on or about the 12th day of February, 1934, and when the order for fuel oil referred to in paragraph Twelfth of this answer was given, plaintiff wrongfully and in breach of the contract hereinbefore referred to, failed and refused to furnish bunker oil C, but, on the contrary, attempted to deliver a substance which was not bunker oil C." It is then set forth that the defendants declined to accept " what was thus tendered, and were compelled to and did purchase bunker oil C

in the open market at a price in excess of that specified in the aforesaid contract." The damage suffered is alleged to be the difference between the contract and open market price.

During the course of the trial, after the defendant Garcia had completed his testimony, the defendants were permitted, over the objection of the plaintiff, to add after paragraph 10 of the answer the following: "That at the time the said contract was entered into the plaintiff knew that the said bunker oil C was to be used for fuel on vessels operated by the defendants, and plaintiff warranted that said oil would be reasonably fit for such purposes; that the defendants relied upon the plaintiff's skill and judgment in the furnishing of fuel oil that would be reasonably fit for use on defendant's vessels," and to add to paragraph 13 of the answer: " And (Warner-Quinlan) failed and refused to deliver fuel oil that was reasonably fit for use on defendants' vessels and further in breach of said contract required that before delivering said oil to the defendants, the defendants should sign a receipt therefor."

We are of the opinion that the court erred in permitting the defendants to amend their answer, since it is obvious that all the plaintiff was required to do under the terms of the written contract was to deliver bunker oil C.

A brief summary of the facts is necessary to indicate our reasons for holding that the appeal taken by the plaintiff is well founded, and that the court should have directed a verdict in favor of the plaintiff.

A contract in writing was entered into between the parties on February 14, 1933, whereby Warner-Quinlan Company agreed to sell, and defendants to purchase, their entire requirements of bunker oil C from February 14, 1933, to February 13, 1934. For almost a year the Warner-Quinlan Company filled orders for oil pursuant to the terms of the agreement. On February 9, 1934, four days before the contract expired by its terms, defendants forwarded to Warner-Quinlan their order for 1,000 tons of oil for delivery on February 12, 1934, to the vessel *Navemar* in New York harbor.

Warner-Quinlan loaded the oil on the barge *Tar & Fuel* and tendered it to the defendants alongside their vessel *Navemar* on February 12, 1934. The evidence indicates, and it is not disputed, that the vessel reached port with a leaky oil tank, and it was necessary to place it in drydock for repairs. When the tender of oil was made it was refused by the defendants. After the defendants' refusal to accept the tender, Warner-Quinlan's barge remained alongside the *Navemar* until twelve-ten A. M., February 13, 1934, and it was then towed back to the refinery.

It was not denied by the defendants that the oil which was tendered was bunker oil C, as described in the specifications of the United States Department of Commerce. It was the obligation of Warner-Quinlan to deliver bunker oil C in accordance with the specifications given to the defendants before they signed the contract. Concededly there was no express warranty upon the part of Warner-Quinlan that the oil would be fit for use on defendants' vessels.

Defendants, however, insist that there was an implied warranty of fitness or suitability for use upon their vessels. We cannot agree with that contention. It must be remembered that the oil was rejected on the ground that the plaintiff " attempted to deliver a substance which was not bunker oil C." Defendants, in their written contract, agreed to purchase bunker oil C, and, consequently, when the plaintiff tendered that commodity, it complied with the conditions of the contract.

The defendants next take the position that they were justified in rejecting the tender on the ground that the "pour point " of the oil comprising this particular shipment was too high. The difficulty with the contention is that the " pour point " is not one of the specifications of bunker oil C. Since that is so, it is quite clear that the testimony concerning the " pour point " of the oil tendered was irrelevant to the issues involved in this litigation. We have already pointed out that the reason assigned for the rejection of the shipment in the answer of the defendants was that the plaintiff " attempted to deliver a substance which was not bunker oil C," and " that defendants therefore declined to accept what was thus tendered."

We conclude, therefore, that the judgment entered in favor of the defendants on plaintiff's third cause of action and upon the counterclaim should be reversed, and the counterclaim dismissed, with costs, and judgment directed in favor of the plaintiffs for the relief demanded in the third cause of action.

MARTIN, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Judgment entered in favor of the defendants on plaintiff's third cause of action and upon the counterclaim unanimously reversed and the counterclaim dismissed, with costs, and judgment directed in favor of the plaintiffs for the relief demanded in the third cause of action. Settle order on notice.